# 20-3785-CV

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

---

Dr. Rupert Green,

       Plaintiff-Appellant,

v.

Department of Education of the City of New York, The United Federation of Teachers,

       Defendants-Appellees,

Carmen Farina, Former Chancellor, sued individually and officially,

       Defendant.

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

**APPELLANT'S BRIEF**

---

DR RUPERT GREEN
Plaintiff-Appellant PRO SE
205-26 113 Ave.
St. Albans, N.Y. 11412
917-601-6425
educateme5@yahoo.com

2

TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................3

ISSUES PRESENTED FOR REVIEW.................................................................4

STATEMENT OF THE CASE.............................................................................5

SUBJECT MATTER AND APPELATE JURISDICTION.................................10

STATEMENT OF FACTS..................................................................................10

ARGUMENT

POINT  I:

THE DISTRICT COURT ERRED BY DISMISSING PLAINTIFF'S
FACTUAL EVIDENCE ON THE DENIAL OF TENURE LAW
PROTECTIONS PRIOR TO THE SERVING OF CHARGES IN
HIS 3020-A ARBITRATION WHICH LED TO HIS WRONGFUL
TERMINATION.....................................................................................18


POINT II :

THE DISTRICT COURT ERRED IN DISMISSING THE CLAIM
THAT THE PRE-HEARING PROCEDURES IGNORED HIS
RIGHTS TO A FAIR HEARING AND THAT THE ARBITRATOR
DISCRIMINATED AGAINST HIM ON THE BASIS OF RACE.............22

POINT III:

THE DISTRICT COURT ERRED BY DENYING PLAINTIFF THE
FIRST AMENDMENT SPEECH PROTECTIONS GUARANTEED
IN THE U.S. CONSTITUTION FOR SENDING EMAILS AS A
PRIVATE CITIZEN ON MATTERS OF PUBLIC CONCERN...................26

CONCLUSION....................................................................................................40

CERTIFICATE OF COMPLIANCE..................................................................40

3

## TABLE OF AUTHORITIES

Ashcroft v Iqbal. (556 U.S. 662, 678 (2009).........................................23

*Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 313 (2d. Cir. 2005)..............................................37

Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ, AAA F.3d 158, 162 (2d Cir. 2006)..........................................................................35

Connick v. Myers, 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)......................................................................................29

Garcetti v. Ceballos, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)...............................................................38

Givhan v. W. Line Consol. Sch. Dist, 439 U.S. 410, 414, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).................................................................31

Green v New York City Department of Education, Index #102017/16, decided February 20, 2018...............................................................9

Freitag v. Ayers, 468 F.3d 528 (9th Cir. 2006).................................30

Marable v. Nitchman, 511 F.3d 924, 932-33 (9th Cir. 2007)...........34

See Massaro v. New York City Dep't of Educ., 2012 U.S. App. LEXIS 10911 (2d. Cir. 2012)........................................................................39

Matthews v. Lynch, 2012 U.S. LEXIS 10463 (2d. Cir. 2012)...............39

Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)...............................29

Ross v. Breslin, 693 F.3d 300, 306 (2d Cir. 2012).......................39

Ruotolo v City of New York, 514 F.3d at 189 (quoting *Lewis v. Cohen*, 165 F.3d 154, 163-164 (2d Cir. 1999).................................39

Weintraub v. Bd. of Educ. of City Sch. Dist. of New York, 593 F.3d at 204 (2d Cir. 2010)...........................................................26

Weintraub v. Bd. of Educ. of City of N.Y., 489 F.Supp.2d 209, 214 (E.D.N.Y. 2007) (" Weintraub II")...........................................28

4

Williams v. Town of Greenburgh, 535 F.3d 71, 76
(2d Cir. 2008).................................................................................29

Woodlock v. Orange Ulster B.O.C.E.S., 281 F. App'x 66, 68 (2d.
Cir. 2008)....................................................................................38

## ISSUES PRESENTED FOR REVIEW

1. Did the district court err by dismissing Plaintiff's
factual evidence on the denial of tenure law protections prior to
the serving of charges in his 3020-a arbitration which led to his
wrongful termination?

- by dismissing Plaintiff's factual evidence that Defendants
  denied him proper Notice of the denial of the protections of
  tenure law, the Constitution, and New York State public
  policy mandates prior to the serving of charges in his 3020-
  a arbitration?

- by dismissing Plaintiff's factual evidence that Defendants
  denied him proper pre-charge protections of tenure law, the
  Constitution, and New York State public policy mandates by
  omitting a vote in executive session on the determination of
  probable cause?

- by neglecting to address Plaintiff's Affidavit, which made
  clear he would submit to a hearing based upon Education Law
  Section (2)(a) as Noticed and served on him, and not any
  other Law, rule or Regulation, yet Arbitrator Murphy paid no
  attention to this in her rush to terminate?

5

   2. Did the District Court err in dismissing Plaintiff's claim that the pre-hearing procedures ignored his Constitutional rights to a fair hearing and that the arbitrator discriminated against him on the basis of race?

3. Did the District Court err by denying Plaintiff his First Amendment speech protections guaranteed by the U.S. Constitution which allowed him to speak out as a private citizen on matters of public concern, namely the lack of funding for vocational education in New York City public schools and the improper procedures used to hire Cory Prober as Principal for COOP TECH?

## STATEMENT OF THE CASE

In this Section 1983 action the gravamen of this matter is the claim of a New York City public school teacher that the New York City Department of Education wrongfully charged and terminated him for engaging in protected speech on matters of public concern under the First Amendment, and that he was denied Constitutional due process procedures before his hearing began to assure his employer that the arbitrator would terminate his employment and silence him, thus denying him his protected rights under the tenure law Education Law 3020-a and the First And Fourteenth Amendments to the Constitution. He appeals the Report and Recommendation of the Magistrate and the Order of the Judge in the court below for dismissing his First Amendment Claim and the

6

cause of action from being given no notice before his hearing
began that his right to proceed under Education Law 3020-a(2), as
served on him, was not the basis for the hearing at all, and that
no Executive Session would be held, and no vote on probable cause
would occur. Thus probable cause for his 3020-a charges were
never properly determined by a vote in an Executive Session as
promised to Plaintiff in his charging papers.(A101). He also
agreed to submit to a hearing only where Education Law Section
3020-a(2)(a) was adhered to (AFFIDAVIT, A64-A65) but the
Arbitrator at his 3020-a and the Court below ignored this
qualification.

Additionally, the Court below threw out Plaintiff pro se's
factual evidence showing white and Asian teachers who used the
internet to speak out on matters of public concern, namely
corrupt practices within the New York City Department of
Education, and were not terminated. Indeed, in one case in the
same Court as herein, the charged teacher Seung Yong Ok won
damages from the Department of $50,001 plus attorney fees,
(Charges A156-A158; Rule 68 Judgment A-159) while the other
teacher, Francesco Portelos, a white male, was awarded a
permanent position teaching computer applications in a Staten
Island Middle School while he continues to this day to undermine
and defame the Department exactly as he had done before he was
charged.(see the full Opinion and Award, with all 38

7

Specifications and penalty, here:

**Francesco Portelos Makes a Bogus Request For a New Trial on His First Amendment Protected Speech at the IS 49 School Leadership Team**
http://www.parentadvocates.org/nicemedia/documents/Portelos-felice-Busto-decision.pdf

Plaintiff claims that the charging process, supported by both the United Federation of Teachers and the NYC Department of Education, violates the foundation of the tenure law, namely to give all charged employees a neutral arbitrator and a fair hearing, by allowing: (1) the employer and the Union to pick an arbitrator (only in New York City; and only tenured teachers in the UFT are not allowed to pick an arbitrator for the 3020-s hearing, administrators in the CSA are permitted to pick the arbitrator); and (2) the employer to file charges against an employee based upon a whim, retaliation, discrimination, dislike, or whatever, and (3) then allow baseless opinions - never validated by the Chancellor or school board - to terminate the employee who has only a token say in his or her hearing.

The Court below (see R&R, Gorenstein A17-A33; Torres Order A11-A16) never addressed the pre-charging denial of Plaintiff's Constitutional rights. The dismissal of Plaintiff's claim to those rights were omitted from the discussion of this case, where the court below focused solely on his "due process rights" AFTER the 3020-a hearing started, as follows (in bold):

(1)  **Plaintiff's submission to a hearing on the charges** - the

8

Court below never addressed the AFFIDAVIT, and the fact that Plaintiff agreed to a hearing, but put a condition on his approval to proceed, namely that he wanted the hearing to proceed AFTER there was a vote on probable cause in an Executive Session, as Noticed to him when he was served his charges pursuant to the NY State tenure law Education Law 3020-a(2)(a).(A101)

(2) **Plaintiff's right to counsel** - Plaintiff hired a private legal team to represent him, the same team who wrote and won the Cardinale case (A51-A62), and made the argument for an Executive Session on the determination of probable cause, but the arbitrator never listened to the arguments presented by the Plaintiff in his testimony or stated by the Attorney representing him.

(3) **Plaintiff's right to testify and be heard** -in title only. Plaintiff was not found credible, and the arbitrator insulted him by finding him immoral and arrogant. She injected her decision to terminate him with comments reflecting her intense dislike of Plaintiff, a tall Black man speaking truth to power in a straightforward, factual manner. The Arbitrator, a white woman, would not allow him access to his Department emails to prove that the charged emails had been altered from the original versions and thus the Department's case was based on

9

lies, and hearsay opinions which served to enrage other staff members. She also would not adjourn the hearing so that the EEOC could investigate Plaintiff's discrimination claim.

All Constitutional issues were prohibited from discussion in his 3020-a by the arbitrator, and were barred from mention in his Article 75 Appeal to the New York state Supreme Court filed in 2016, and dismissed by Judge Engoron in 2018. (Index #102017/16, decided February 20, 2018). Plaintiff submitted his EEOC complaint and letter from the Agency saying they would investigate his discrimination claim and denial of his First Amendment rights as a result,(A102-A104) asking for an adjournment of the hearing, but the arbitrator refused to adjourn for any amount of time and sped through the hearing.

The arbitrator also denied Plaintiff access to his NYC Department of Education account so that he could not submit all the helpful, and informative emails he sent to staff during his 15 years as a computer technician. He was, therefore, precluded from proving his testimony that the Department altered his charged emails to make them more in-line with their argument that he kept sending staff his whistleblower claims after he was told not to.

Plaintiff seeks from his former Employer monetary damages and his employment returned to him as a STEM high school teacher, mentor and/or coach; he asks for equitable relief from the misconduct of

his Union in agreeing to the denial of tenure law Constitutional protections before he was served his 3020-a baseless charges.

## SUBJECT MATTER AND APPELLATE JURISDICTION

The District Court had subject matter jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331 and 1343 for claims arising under 42 U.S.C. 1983, in particular the protections given by the Freedom of Speech First Amendment rights and Equal Protection Clause enclosed within the Fourteenth Amendment, as well as State law claims codified in the New York State Constitution, and Education Law §3020-a (the "tenure law").

This Court has jurisdiction over the judgment in this case pursuant to 28 U.S.C. § 1291.

## STATEMENT OF FACTS

 Plaintiff was, until 2016, a tenured teacher employed with Defendant the New York City Department of Education, beginning on or about February 2001 through April 2016. Up until the 2016 school year, Dr. Green had a documented stellar performance record as a teacher of computer technology and repair. He was praised by the principal, and others, for his work at the school, in and outside of his actual classroom, he raised money for the school and its' students, and had a wonderful working relationship with staff and students.

He specialized in teaching computer technology and Career Technical Education ("CTE"). Petitioner is a highly qualified and educated individual, who has attained an Associate's Degree in Electronics Engineering Technology, a Bachelor's Degree in Occupational Engineering, a Master's Degree in Learning Technology, a Master's Degree in School Administration, and a Doctorate in Education and Leadership. Prior to working with the NYC Department of Education, Plaintiff worked at Mercy Hospital in New Jersey in the field of biomedical engineering and electronics technology, maintaining computerized medical equipment. Throughout the entirety of his employment with DOE, Plaintiff taught for The School of Cooperative Technical Education ("Coop Tech").

Coop Tech is a high school organized within District 79 of the New York City public school system. District 79 is a city-wide school district for nontraditional students, such as those who are incarcerated, hospitalized or in temporary housing, and adult students preparing for General Educational Development tests. Coop Tech is a multiple-site high school that specializes in CTE and vocational trade education. The central site of Coop Tech is located on East 96th Street in New York, New York. Plaintiff was assigned to an alternate location at John Adams High School.

It is no secret in New York City that vocational high schools in New York City are underfunded and composed of mainly students who

from African-American or Latino families. Plaintiff, himself a Black man, often sent emails out to staff about this issue. When he was told to stop, he created a dropbox for the attachments, so anyone could quickly dispose of his emails if they did not want to receive them. The emails were not sent to students, only staff. If anyone asked Plaintiff to remove his or her name from the email list Plaintiff removed the name as requested.

On November 5, 2015 Dr. Green sent an email saying that John Widlund had hired a husband and wife team against Chancellor's Regulations. Everyone in the school knew that Dr. Green was referring to Alicia Konze, Secretary to the Principal Anda McGowan, and teacher Carlos Caraballo, and that Ms. Konze was giving Mr. Caraballo favors, such as per session money. Neither Konze nor Caraballo filed an application for permission to work together at the same school from the Conflict of Interest Board (COIB).

The staff members who were bothered by Dr. Green's reference to the lack of transparency at Coop Tech and the lack of information about proper procedures, changed the information, made the "husband and wife team" Konze and Assistant Principal Anda McGowan, and charged Dr. Green for citing false information and upsetting staff. His alleged "lie" was subsequently charged against him at 3020-a, a sign of the bad faith and malicious

prosecution that forced him into the termination hearing 3020-a arbitration. The Konze-McGowan lesbian relationship was a lie, and everyone knew it.

In 2015 John Widlund, the Principal of "COOP TECH", retired. Suddenly, without any C-30 procedure to appoint a new Principal, a notice was sent to the staff at COOP TECH in December 2015 that Mr. Cory Prober was appointed Principal. Plaintiff wrote letters to the NYC Department of Education, citing this improper appointment of Prober, as well as three other administrators, because no C-30 process was held for any of them. (A84, A85-A86)His speech, he believed, as his right as a private citizen on a matter of public concern.

The retaliation was swift. Prober, angry that Plaintiff was speaking out against the clandestine way he was appointed Principal and the funding issues for vocational education which were severely limited due to racial inequalities in the resource pipeline at the NYC Department of Education, placed a disciplinary letter in Plaintiff's file on March 2, 2016 and then contacted Department investigators to substantiate charges of harassment by Dr. Green.

In March 2016 Dr. Green sent a Complaint to the U.S. Department of Education, Office of Civil Rights (OCR) alleging that the NYC DOE had retaliated against him for his advocacy for vocational education. On April 4, 2016 Plaintiff was reassigned to a "rubber

room", and then on April 22, 2016 was served with 3020-a charges as mentioned previously, where there was no date on the finding of probable cause in an Executive Session.

On or about May 3, 2016 Plaintiff received a letter from OCR saying that his claims were being investigated, pursuant to Title VI of the Civil Rights Act of 1964 as amended 42 U.S.C. §2000d et seq., and its implementing regulation at 34 C.F.R. Part 100:

"Please be advised that the NYCDOE may not harass, coerce, intimidate, or discriminate against any individual because he or she has filed a complaint or participated in the complaint resolution process."

On or about May 11, 2016, Plaintiff's Attorney Jonathan Behrins sent a letter to his 3020-a Arbitrator Leah Murphy giving his notice of appearance and also requesting a stay due to the ongoing investigation of OCR on the same charges as filed against Plaintiff at the 3020-a hearing. (A102-A104). Arbitrator Murphy denied this request, and moved forward with the hearing, ready to terminate Plaintiff without proper determination of probable cause, and without obtaining subject matter jurisdiction.

One of the first acts that showed Murphy's bias was to deny Plaintiff access to his NYC Department of Education employee emails from which he had been blocked by the Department when reassigned. Plaintiff asked Murphy for access in order to show how the Department had altered his charged emails to make it look like he was sending these emails to everyone on the staff,

indiscriminately. Murphy denied him any access. Her personal dislike for Plaintiff can be seen in her termination decision where she went outside the charges and added her own opinions of Plaintiff, that he was an arrogant employee who could never stop harassing anyone.

The DOE Internet Policy says nothing about sending dropbox email attachments about matters of public concern as being labelled "misconduct". The question of First Amendment rights was not litigated in the 3020-a, and Plaintiff has a triable issue of a private citizen speaking on matters of public concern.

Cory Prober retaliated against Plaintiff by signing the "Notice of Determination of Probable Cause on Education Law 3020-a Charges" served with the charges against Plaintiff on April 22, 2016.(Appendix, A-101). Prober was the same person who created, pursued, and complained about Plaintiff – the judge and jury. The Notice received by the Plaintiff on or about April 24 2016 states that there was a vote in an Executive Session of the NYC school board, the Panel For Educational Policy, on Probable Cause for the charges pursuant to Education Law 3020-a(2)(a), but the date box is blank.(A101)

Immediately upon receipt of these charges Plaintiff Notarized an AFFIDAVIT using the Notice "pursuant to Education Law 3020-a" as the basis for his agreeing to submit to a hearing that proceeded with an Executive Session and a vote on probable cause.

In this Affidavit (A64-A65) Plaintiff stated that Principal Prober had no lawful right to sign the Notice of Determination of Probable Cause page, nor could Prober be delegated or have any right to Determine Probable Cause. Even if it was possible for Prober to "find" probable cause for the 3020-a charges, which it is not, he would still have to have an Executive Session where he had a vote with a minimum of three people present. This never happened, and at no time did anyone from the Department say that Prober held a meeting on the probable cause.

On May 12, 2016 Plaintiff submitted his Affidavit as part of a Motion To Dismiss For Lack of Subject Matter Jurisdiction wherein he cited his objection to the manner in which his charges were filed without a vote in an Executive Session, to Arbitrator Murphy and the Department Attorney prosecuting him at his 3020-a. Murphy denied his Motion, leaving open whether or not she had the lawful authority or jurisdiction to deny it.

At the end of the testimony Murphy terminated Plaintiff in her Opinion and Award, saying that he harassed people with his emails, disrupted his students' learning at the school, and he would never stop. Murphy basically summed up the Plaintiff as a ne'er do well, a miscreant who just wanted to stir up trouble. She went outside the four corners of the record and gave her personal, very biased opinion. At no time was there any witness testimony or evidence placed into the record that any student of

17

Dr. Green or in the school was harmed, made uncomfortable, was upset, or had his/her learning blocked by Dr. Green. The so-called "harassment" by Green was made up by Prober and staff members who were told to testify about how Green disrupted the school when indeed he did no such thing.

Dr, Green filed an Article 75 Appeal to the NY State Supreme Court to overturn the extreme, unconscionable termination determination. No Constitutional issues were argued. His appeal was denied.

Dr. Green filed his original complaint against the NYC DOE and Carmen Farina, former Chancellor of DOE, on November 19, 2018. On October 22, 2019 Dr. Green filed an Amended Complaint, with Carmen farina removed, and the UFT added as a Defendant.

He alleged the following:(1) a First Amendment retaliation claim, (AC¶¶ 35-37; (2) a Fourteenth Amendment procedural due process claim regarding the manner in which his section 3020-a hearing was conducted, see id. ¶¶ 49-51; (3) an Equal Protection claim under the Fourteenth Amendment based on the termination procedures for New York City teachers in comparison to other New York teachers, see id. at ¶¶ 26-33; and (4) a due process "stigma plus" claim based on Green's claims of reputational harm, see id. ¶¶ 52-53. (A63-A86)

On June 17, 2020 Magistrate Gabriel W. Gorenstein filed a Report and Recommendation that dismissed Plaintiff's case and granted

18

Defendants' Motions To Dismiss. On September 30, 2020, Judge Analisa Torres adopted the R&R in its entirety, dismissed Plaintiff's federal claims with prejudice but allowed him to refile his state claims in state court.

The judgment of the District Court was entered on docket on September 39, 2020 (A10, Docket #72), Dr. Green filed his Notice of Appeal on October 29, 2020. (A10, Docket #73). This appeal is taken from a final judgment that disposes of all claims on behalf of all parties hereto.

ARGUMENT

**POINT I:**

**THE DISTRICT COURT ERRED BY DISMISSING PLAINTIFF'S FACTUAL EVIDENCE ON THE DENIAL OF TENURE LAW PROTECTIONS PRIOR TO THE SERVING OF CHARGES IN HIS 3020-A ARBITRATION WHICH LED TO HIS WRONGFUL TERMINATION**

No judge or arbitrator except Judge Desmond Green in the case of Rosalie Cardinale (A51-A62) has properly addressed the improper determination of probable cause leading to charges being served on tenured educators pursuant to 3020-a arbitration. The result is, arbitrators are without subject matter jurisdiction and should not be permitted to hear any of these cases under these circumstances. Plaintiff Dr. Green is a victim of this error-filled procedure.

19

The proper determination of probable cause which is required by statute in New York State (Education Law 3020-a(2)(a)) is detailed in this Law, with a series of steps which must be taken in order to give an arbitrator subject matter jurisdiction. The school board in New York City is the Panel For Educational Policy ("PEP"). Plaintiff submitted the Bylaws of the PEP (A87-A100).In these Bylaws, agreed to by the New York State legislature when Mayoral control was established in 2002 and renewed in 2009, the Chancellor "shall serve as a non-voting ex-officio member of the Panel for educational Policy……The Chancellor is the chief executive officer and Superintendent of the City School District and shall have such powers and duties as are prescribed by law. He/she shall have a seat on the Panel for Educational Policy and the right to speak, but not to vote, on all matters before the Panel." (BYLAWS, PREAMBLE and Article 1, Section 1.1).

Corey Prober, Principal at COOP TECH, did not have any lawful authority to determine probable cause and sign off on the Notice of Determination of Probable Cause Pursuant to Education Law 3020-a. (See A101). The Department of Education and the UFT in the hearing itself and in all courts have ignored the AFFIDAVIT filed before the pre-hearing by Dr. Green which states he will submit to a hearing, but only with the proper finding and a vote on probable cause pursuant to the Notice he was sent and Education Law 3020-a(2)(a). No Judge in any Court and no

Defendant in the Court below showed that Plaintiff was given a Notice that he would never have an Executive Session vote on probable cause because this mandate was removed from the Law for New York City teachers.

Plaintiff argued in his Motion To Dismiss For Lack of Subject Matter Jurisdiction, and in the Court below, that he complained about the <u>pre-trial</u> errors of procedural due process as well as the substantive errors made during the 3020-a. Magistrate Gorenstein only mentioned in his R&R case law which deals with what Plaintiff's rights are <u>AFTER</u> the hearing begins. Magistrate Gorenstein described the notion of "due process" as follows (Gorenstein's R&R dated 7/31/19, Docket #28; A17-A33):

"Under the Due Process Clause of the Fourteenth Amendment, before a tenured public employee can be terminated, the "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." …..This is all the process that Green was due under the Fourteenth Amendment."

Magistrate says that the Plaintiff must have written notice of the charges, but not notice of the Law used to proceed with the charges, namely Education Law 3020-a(2)(a). Does a hearing based upon a Law that the Plaintiff was denied when he went to the hearing, still have validity? This is the question.

It is clear that Magistrate Gorenstein believes that any random or arbitrary procedure used to charge a tenured teacher is ok, because the only right a tenured teacher has under the Fourteenth Amendment is to have a hearing and testify. This is a triable issue.

Magistrate Gorenstein referred to Plaintiff's first Objections to the R&R submitted August 13, 2019 (Docket #30) and dismissed Plaintiff's arguments as already heard. Plaintiff argues here that the Magistrate never heard his argument. The facts of the denial of protections pursuant to Education Law 3020-a(2)(a), as cited in the Cardinale ruling (A51-A62) are valid and no facts have disputed the evidence presented by the Plaintiff here, that there was no vote in Executive Session, and no notice that the hearing he would be forced into would be without this step as cited in Education Law 3020-a(2)(a) and in his Affidavit.

Cory Prober, angry that Plaintiff was speaking out about the errors in the process whereby Prober became principal at COOP TECH, placed a letter and suddenly "found" probable cause to send Plaintiff to a "rubber room" and then a termination hearing under an Arbitrator chosen to fire the Plaintiff. There is no adherence to due process in this set up.

It is not astonishing that Magistrate Gorenstein and Judge Torres do not want to touch the issue of charging teachers without a proper determination of probable cause. This would open a

floodgate of cases for 18 years, since Mayoral control took hold of New York City and the New York City Department of Education. The only fact that must be reviewed and resolved by this Court is that the Law/right that the Constitution gives to tenured educators to an Executive Session and vote on probable cause for 3020-a charges was never removed from the laws of NY State by the State Legislature, and the NYC Department of Education has de-frauded the educators who have been terminated, suspended, and fined by the false statements made in their 3020-a hearings and in the false procedure used to serve charges on any Respondent. Additionally, this Court must finally resolve the conflict in the Education Law 2590-H, first paragraph, with Education Law 3020-a(2)(a): that the NYC Chancellor was never given a right to vote as an ex-officio panel member of the PEP.

Thus, Plaintiff's claim to never receiving a fair hearing and being wrong-fully terminated by an Arbitrator without subject matter jurisdiction to rule on his 3020-a charges is a valid claim, and one that should be tried before a jury.

### POINT II :

**THE DISTRICT COURT ERRED IN DISMISSING THE CLAIM THAT THE PRE-HEARING PROCEDURES IGNORED HIS RIGHTS TO A FAIR HEARING AND THAT THE ARBITRATOR DISCRIMINATED AGAINST HIM ON THE BASIS OF RACE**

The denial of a vote in Executive Session is a symptom of a gaping wound in the Department of Education on the issue of

inequalities and injustice due to race. Plaintiff's Complaint is
based upon the pattern and practice of disturbing/destroying
tenured teachers' rights throughout the UFT membership, not just
to him. Plaintiff also showed in his papers that teachers who
exercise their right to First Amendment protected speech and are
Black receive harsh punishment, retaliation and termination,
rather than small fines given to non-Black educators.
Plaintiff submitted evidence to this Court which supports what he
is saying in his Amended Complaint and these documents push his
claim from conceivable to plausible pursuant to the
standard set under Ashcroft v Iqbal. (556 U.S. 662, 678 (2009)
(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)),
R&R p.3; A17-A33). Plaintiff's submitted Exhibits, see below,
with his Amended Complaint (Docket #34) were ignored in the R&R:

1.  Dr. Green's AFFIDAVIT on Proper Determination of Probable
    Cause (A101)

2.  Complaint re Corey Prober's Appointment as Principal

3.  NYSUT Letter on Cardinale decision

4.  Bylaws of the Panel For Educational Policy ("PEP")

5.  Decision of Judge Desmond Green in Cardinale case

6.  **Letter from UFT General Counsel Adam Ross**

7.  Email from Dr. Green citing retaliation and violation of his
First Amendment rights by SCI investigation

8.  Affidavit of Service on UFT and DOE 10/22/19

9.   Appearance of NYSUT Attorney Oriana Vigliotti, for the UFT
11/6/19

Magistrate Gorenstein summarized one of Plaintiff's claims as
"Green does allege "[t]he DOE and UFT target black male teachers
who speak out while teaching, and terminate each of these
teachers at 3020-a, where the procedures used to charge teachers
are without support in the Education Law and deny certain
Constitutional rights without just cause," id. ¶4, which suggests
a practice of retaliation against black male teachers for
unfavorable speech. These allegations, however, are conclusory
and thus nowhere near sufficient to allege that "an official
policy of the municipality caused the constitutional injury." (p.
9). Yet Plaintiff submitted for the Court's review the charges
and cases just cited of Francesco Portelos and Seung Yong Ok, the
first teacher is a white male and second, an Asian teacher who
both were not terminated but had similar charges to those of Dr.
Green. Ok received a Rule 68 judgment for $50,001.(A159) His
statements about the racial inequalities that exist in the
charging process and throughout the Department are hardly
conclusory, as Plaintiff cites in his Objections to the R&R (A34-
A50). Judge Torres ignored all of Dr. Green's arguments.
Any claim made by Plaintiff which is inconvenient to the Court's
purpose of dismissing the (Amended) Complaint was ignored, as if
it never existed. Then, his allegations became "vague and

conclusory", and "without merit". Plaintiff's case was not heard in this Court and he objects to this injustice.

Justice for Black male teachers who speak out is a rare event, and educators have written about and spoken about the rampant racism and disparate treatment for many years. Recently the talk has become louder, as the inequalities of race have become more visible in the media and on the internet. The disparate treatment is similar to the lack of funding given to vocational education in New York City, where most of the student body are Black and Hispanic children. They are without a voice.

Plaintiff spoke as one of those thousands of whistleblowers in the NYC school system who see the big picture and want to change the unfairness of it all. Dr. Green spoke as a private citizen on matters of public concern, and his voice should have been given all the First and Fourteenth Amendment protections he was due. Instead, he got nothing. His speech and whether he had the protection of the Constitution are triable issues.

In addition to Arbitrator Murphy's very clear dislike for Plaintiff during the hearing and in her decision, there are several other issues that show her bias and unfairness to Dr. Green. One is the fact that she received $1400/day for a calendar year filled with cases from the New York City Department of Education, along with additional perks from the NYC Department of Education - as long as she terminates the Respondents. All

arbitrators are told to be harsh, and all know what happens if they are lenient, and give small fines or none. They are let go from the panel.

Only in New York City is there a panel hired for a year by the employer and Union. Members of school districts outside New York City may choose their arbitrator for their 3020-a hearing. Also, only in New York City and only UFT members who are charged, are prohibited from choosing their arbitrator. Members of the Council of Supervisors and Administrators (CSA) who are tenured and charged may choose their arbitrator in NYC 3020-a hearings as well as out of the City.

Arbitrator Murphy did not care to listen to the Plaintiff or his witnesses at the 3020-a. She forbade him from pursuing the EEOC complaint to the end, and denied his access to his emails on his Department account, simply to preclude any exculpatory evidence from the case which could interfere with predisposed decision to terminate Dr. Green unfairly.

POINT III:

**THE DISTRICT COURT ERRED BY DENYING PLAINTIFF THE
FIRST AMENDMENT SPEECH PROTECTIONS GUARANTEED
IN THE U.S. CONSTITUTION FOR SENDING EMAILS AS A
PRIVATE CITIZEN ON MATTERS OF PUBLIC CONCERN**

Judge Mauskopf in Weintraub v. Bd. of Educ. of City Sch. Dist. of New York, 593 F.3d at 204 (2d Cir. 2010)stated, "The Second Circuit has stated that speech is "pursuant to" an employee's

official duties when it is "part-and-parcel" of the employee's
concerns about his ability to "properly execute his duties," or
when the speech is a "means to fulfill" and "undertaken in the
course of performing his primary employment responsibility..."
*Weintraub*, 593 F.3d at 203-04 (holding that a teacher's grievance
regarding classroom discipline was pursuant to his official
duties because it was part-and-parcel of his concerns about his
duty to properly execute his duties as a school teacher).

On April 28, 2006, the district court denied Defendants' motion
with respect to Weintraub's First Amendment claim, reasoning that
"the content of speech questioning an administrative response, or
lack thereof, to discipline problems in the classroom relates to
a matter of public concern, regardless of whether that speech
comes from a[n] elected official, citizen, or teacher." Id. at
52. Finding that the "form and context of Weintraub's statements"
did not warrant a finding to the contrary, and that Weintraub's
"primary motivation was a general concern for safety in the
classroom and school," rather than "a desire for some personal
gain," the district court held that "Weintraub's complaint to
Goodman and subsequent grievance were protected by the; First
Amendment." Id.

On May 29, 2007, after Defendants moved for reconsideration in
light of the Supreme Court's subsequent decision in Garcetti, <u>547
U.S. at 421-24, 126 S.Ct. 1951,</u> the district court granted in

part and denied in part Defendants' motion for summary judgment with respect to Weintraub's First Amendment claim. The district court identified three categories of speech for which Weintraub could "plausibly claim retaliation":

(1) [his] private conversation with Goodman in which he expressed his dissatisfaction with Goodman's handling of the book-throwing incidents and threatened to file a grievance if the situation was not rectified; (2) Weintraub's conversations with other teachers about the incidents and Goodman's failure to impose adequate discipline; and (3) the formal grievance itself.

Weintraub v. Bd. of Educ. of City of N.Y., 489 F.Supp.2d 209, 214 (E.D.N.Y. 2007) (" Weintraub II").

The district court denied summary judgment with respect to the second category, because "Weintraub's conversations with other teachers about his conflict with Goodman . . . [we]re clearly not within the scope of his employment duties." Id. at 220.

In contrast, the district court concluded that under Garcetti and in light of cases from other circuits applying Garcetti in similar situations, the First Amendment does not protect the first and third categories of speech: "In both instances, Weintraub was speaking as an employee, proceeding through official channels to complain about unsatisfactory working conditions." Id. at 219-20. The district court, however, believed that "a substantial ground for difference of opinion may exist

29

on" the precise issue of "whether a public employee acts as an
`employee,' and not as a `citizen,' when he notifies his
supervisors, either formally or informally, of an issue regarding
the safety of his work-place that touches upon a matter of public
concern, as well as on the employee's own private
interests." Id. at 221-22. The district court noted that the
issue was one of first impression in this circuit.
"Regardless of the factual context, we have required a plaintiff
alleging retaliation to establish speech protected by the First
Amendment." Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d
Cir. 2008). Under the First Amendment, "a state cannot condition
public employment on a basis that infringes the employee's
constitutionally protected interest in freedom of
expression." Connick v. Myers, 461 U.S. 138, 142, 103 S.Ct.
1684, 75 L.Ed.2d 708 (1983). "Rather, the First Amendment
protects a public employee's right, in certain circumstances, to
speak as a citizen addressing matters of public
concern."  Garcetti 547 U.S. at 417,  126 S.Ct. 1951; see also
Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, 391 U.S.
563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Connick, 461 U.S.
at 147, 103 S.Ct. 1684.

 Weintraub spoke pursuant to his job duties is supported by the
fact that his speech ultimately took the form of an employee
grievance, for which there is no relevant citizen

30

analogue. Garcetti provided two examples of speech with a
citizen analogue: (1) a schoolteacher's "letter to a local
newspaper," which the Supreme Court held to be protected
in Pickering, because it had "no official significance and bore
similarities to letters submitted by numerous citizens every
day," and (2) "discussi[ons of] politics with a co-
worker." Id. at 422-23, 126 S.Ct. 1951. Although the lack of a
citizen analogue is "not dispositive" in this case, id. at
420, 126 S.Ct. 1951, it does bear on the perspective of the
speaker — whether the public employee is speaking as a citizen —
which is the central issue after Garcetti see Williams, 480 F.3d
at 692 (stating that "[u]nder Garcetti, we must shift our focus
from the content of the speech to the role the speaker occupied
when he said it" to determine whether the speaker was "acting in
her role as `citizen'").

In Freitag v. Ayers, 468 F.3d 528 (9th Cir. 2006), the Ninth
Circuit shed light on when a relevant analogue to citizen speech
exists. The Freitag court focused on a former prison guard's
"responsibility as a citizen to expose . . . official
malfeasance" in holding that the First Amendment protected her
complaints to a state senator and the Inspector General's office
about her superior's failure to respond to inmates' sexually
explicit behavior towards female guards. Id. at 545 (emphasis in
original). The Freitag court emphasized that there was a relevant

31

citizen analogue to the employee's speech, because the "right to complain both to an elected public official and to an independent state agency is guaranteed to any citizen in a democratic society regardless of his status as a public employee." Id.

In Givhan v. W. Line Consol. Sch. Dist, 439 U.S. 410, 414, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979) ("[The Supreme] Court's decisions . . . do not support the conclusion that a public employee forfeits his protection against governmental abridgment of freedom of speech if he decides to express his views privately rather than publicly.").

In Givhan, a junior-high teacher had privately requested that the school principal make a number of administrative changes, all of which "reflect[ed] Givhan's concern as to the impressions on black students of the respective roles of whites and blacks in the school environment." Ayers v. W. Line Consol. Sch, Dist, 555 F.2d 1309, 1313 (5th Cir. 1977). Writing for a unanimous Supreme Court, then-Justice Rehnquist wrote that Givhan's speech was protected even though it consisted of a private, internal communication and even though the principal was a willing recipient of her speech. See Givhan, 439 U.S. at 415-16. Givhan's speech concerned her students' opinions on the school's handling of racial issues, a matter that has serious pedagogical implications. Accordingly, it could be described as a "means to fulfill . . . [his] primary employment responsibility of

32

teaching," and, thereby, as an effort to further her core duty of
"effective teaching." Maj. Op. at 203 (internal quotation marks
and citations omitted); cf. id. at 202 (citing Renken v.
Gregory, 541 F.3d 769, 773 (7th Cir. 2008), for the proposition
that any actions taken "for the benefit of students" and that
"aid[] in the fulfillment of . . . teaching responsibilities" are
within a teachers' duties). And it certainly was a private
communication to a \villing audience that a regular citizen
likely could not access in the same way. As a result, I fear that
some courts will conclude that speech like Givhan's would fail
both prongs of the majority's test. But Garcetti specifically
reaffirmed Givhan. See Garcetti 547 U.S. at 420-21, 126 S.Ct.
1951.

I recognize and greatly appreciate the majority's analysis of why
its two-prong test is consistent with Givhan, and why Givhan is
distinguishable from the case before us. But if Givhan survives
it is because the twopronged test the majority employs is not in
fact the end of the matter. For that reason, I

discuss Givhan primarily to illustrate why I believe that the
test outlined today does not suffice to differentiate protected
and unprotected speech.

Furthermore, the pragmatic concerns motivating Garcetti do not
support such an expansive reading. Garcetti recognized the need
for employers to have die freedom to "ensure that their

33

employees' official communications are accurate, demonstrate sound judgment, and promote the employer's mission." Id. at 422-23, 126 S.Ct. 1951. When an employee is engaged in speech that the "employer itself has commissioned or created," id. at 422, 126 S.Ct. 1951, then the employee is acting as an agent or a mouthpiece of the employer, and the employer must have a substantial degree of control over the employee's execution of his responsibilities. If an employer could not discipline or fire an employee for the substance of his work product, the employer would be all but unable to function.

By contrast, when an employee's speech is not part of die implementation of the employer's business operations, the employer does not depend on "substantive consistency and clarity," id. at 422, 126 S.Ct. 1951, in that speech. Instead, employers may well benefit from a narrowly defined exception to First Amendment protection, for an exemption that sweeps more broadly than necessary will likely encourage employees to make complaints publicly when they might otherwise tie handled internally. See id. at 424, 126 S.Ct. 1951 ("Giving employees an internal forum for their speech will discourage them from concluding that the safest avenue of expression is to state their views in public.").

On this point, both the majority and at least one of the dissenters in Garcetti were in agreement. See Garcetti, 547 U.S.

at 427, 126 S.Ct. 1951 (Stevens, J., dissenting) ("[I]t seems
perverse to fashion a new rule that provides employees with an
incentive to voice their concerns publicly before talking frankly
to their superiors.").

I would hold the scope of Garcetti to be coextensive with its
prime concerns and to go no further. An employee's speech is
"pursuant to official duties" when the employee is required to
make such speech in the course of fulfilling his job duties. This
necessitates a "practical" inquiry into each plaintiffs job
duties. See id. at 424, 126 S.Ct. 1951; see also Marable v.
Nitchman, 511 F.3d 924, 932-33 (9th Cir. 2007). I do not mean to
suggest that speech must be explicitly envisioned in a job
description or specifically requested by the employer; on this
point I agree with the majority. See Maj. Op. at 203. ("[S]peech
can be `pursuant to' a public employee's official job duties even
though it is not required by, or included in, the employee's job
description, or in response to a request by the employer."). But
it must be possible to say that the employer has "commissioned or
created" the speech, Garcetti 547 U.S. at 422, 126 S.Ct. 1951 —
that the employer in some way relies on the speech made by the
employee, as where the speech is an "official communications" or
is used by the employer to "promote the employer's
mission," id. at 423, 126 S.Ct. 1951.

In Garcetti for example, the plaintiff Richard Ceballos's

responsibilities as a calendar deputy called for him "to advise his supervisor about how best to proceed with . . . pending case[s]." Id. at 421, 126 S.Ct. 1951. The speech at issue involved a memo recommending that a case assigned to Ceballos be dismissed, which Ceballos was not authorized to do without his supervisor's approval. Brief of Petitioner at 4, Garcetti 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). The memo that Ceballos wrote was not merely related to his job duties, but rather it was the very thing he was paid by the Los Angeles County District Attorney's Office to do. Without Ceballos's competent advice and input, his employer could not function anywhere near as well. His employer therefore had a need to supervise the quality and content of that speech, and was entitled to discipline him accordingly.

As far as the record reflects, Appellees here did not in any way depend on Weintraub bringing union grievances or refraining from bringing them (subject, of course, to the requirement that speech not "disrupt!.] the workplace," Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ, AAA F.3d 158, 162 (2d Cir. 2006)). He may well have been in a position to file a grievance only because of his official duties, and the subject matter of that grievance may have had the potential to further those duties, but neither of these facts establishes that he filed his grievance pursuant to his official duties.

36

In the present posture of the case, I take it as a given that
Weintraub's duties entailed informing the school administration
of violent incidents, such as those at the root of this case, as
a means of facilitating the school's disciplinary apparatus. This
justifies the District Court's holding that Weintraub's comments
to his supervisor were not protected. But grieving the
administration's response through his union is quite another
matter. And neither  the Appellees nor the majority direct us to
any evidence that such a response was in any way required of
Weintraub. It is possible that the union grievance was an
official part of a process by which employees brought subjects of
concern to Appellees' attention, facilitating corrective action;
if this were the case, then Weintraub's grievance might be
pursuant to his official duties and exempt from First Amendment
protection. But on the record before us, there is no reason to
think this is so.

Because Weintraub does not appeal this part of the District
Court's holding, we need not consider it in any detail.

As a general matter, I doubt that most employers would view union
activity as something that their employees do for the employer's
benefit. There is a distinct irony in the idea that unions, which
so many employers seek to exclude from the workplace, are somehow
transmuted into entities that "promote the employer's
mission," Garcetti, 547 U.S. at 423, 126 S.Ct. 1951, for purposes

of the First Amendment.

If nothing else, this presents a question that should be explored on remand or put before a jury. It should not be disposed of on summary judgment without further inquiry. This is exactly what the Ninth Circuit did in Freitag v. Ayers, 468 F.3d 528 (9th Cir. 2006), upon which the majority relies. Freitag found that a first level of internal forms filed by a corrections officer about inmate misconduct was unprotected, as the officer was "required as a part of her official duties to report inmate misconduct and to pursue appropriate discipline," but it also remanded the case to the district court "for a determination of whether prison guards are expected to air their complaints regarding prison conditions all the way up to the CDCR director." Marable, 511 F.3d at 932; see also Freitag, 468 F.3d at 546. I agree with the majority that Freitag provides a good model for the case before us — but I do not believe that it supports the majority's conclusion.

Plaintiff has a triable First Amendment retaliation claim.

In order to prevail on a First Amendment retaliation claim, a Plaintiff must demonstrate that he engaged in speech protected by the First Amendment, that he suffered an adverse employment action, and that a causal connection between the two existed, "in that the speech was a substantial or motivating factor for the adverse employment action." *Burkybile v. Bd. of Educ. of*

38

*Hastings-On-Hudson Union Free Sch. Dist.,* 411 F.3d 306, 313 (2d.
Cir. 2005). Here, it is clear that he spoke about racial
inequities in education in New York City as well as elsewhere in
the United States, and blew the whistle on staff members using
school resources improperly. Any citizen who entered the school
would have done the same.

In determining whether a public employee has engaged in
constitutionally protected speech, the court must determine
"whether the employee spoke as a citizen on a matter of public
concern." *Woodlock v. Orange Ulster B.O.C.E.S.*, 281 F. App'x 66,
68 (2d. Cir. 2008)(quoting *Garcetti v. Ceballos*, 547 U.S. 410,
418 (2006)). The inquiry into whether an individual was speaking
as a citizen "is a practical one." Garcetti, 547 U.S. at 424-25.
Speech by a public employee retains some possibility of First
Amendment protection when it "is the kind of activity engaged in
by citizens who do not work for the government." *Id.* at 423.
Defendants have made wholly conclusory statements that all of the
factual underpinnings of Plaintiff's speech became available to
him as a result of his role as an educator. However, a closer
examination of the facts reveals that Plaintiff's speech was
clearly in the nature of his role as a concerned citizen, on
matters of public concern.

Plaintiff reported fraud and misconduct to the NYC Department of
Education administrators as well as the general public, not as a

teacher, but as a private citizen. Contrary to the Defendants'
contention, Plaintiff's speech was not of the type normally made
as part of a teacher's official duties. Nowhere in his job
description was he required to raise concerns about the school's
budget, or investigate budgetary misconduct, and other
inappropriate fraudulent actions by the school's administration.
His speech did not concern issues for which "there is no relevant
citizen analogue," but rather was motivated by his concerns as a
member of the community and by information available to the
public. *See Massaro v. New York City Dep't of Educ.*, 2012 U.S.
App. LEXIS 10911 (2d. Cir. 2012) Neither was Plaintiff's speech
"part and parcel" of his official duties as a teacher, as a
teacher's duties clearly do not encompass reporting on budgetary
irregularities. *See Matthews v. Lynch*, 2012 U.S. LEXIS 10463 (2d.
Cir. 2012); *Ross v. Breslin*, 693 F.3d 300, 306 (2d Cir. 2012).
Plaintiff was not speaking generally as an advocate for his
students, nor as an employee as part of his duties. He spoke as a
citizen concerned about budgetary irregularities, racial
inequalities in funding vocational education, and issues with a
broad public interest. *See Ruotolo v City of New York*, 514 F.3d
at 189 (quoting *Lewis v. Cohen*, 165 F.3d 154, 163-164 (2d Cir.
1999)).

40

CONCLUSION

Appellant respectfully asks that this Court reverse the judgment of the District Court with a finding of fact in favor of Appellant. In the alternative the Court should remand the case for a fair and impartial trial before an unprejudiced jury on proper evidence and under correct instructions as is just and proper.

Respectfully Submitted,

_____/s/_____
Dr. Rupert Green
Appellant

CERTIFICATE OF COMPLIANCE

I, Dr. Rupert Green certify that this brief contains less than 14,000 words.